# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:05CV430-H

| | |
|---|---|
| KAREN FIELDS,<br>      Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br>      Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Plaintiff's Motion for Summary Judgment" and "Brief Supporting ..." (both document #17) filed May 16, 2006; and Defendant's "Motion For Summary Judgment" (document #18) and "Memorandum in Support of the Commissioner's Decision" (document #19), both filed July 10, 2006. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Supplemental Security Income benefits is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Plaintiff's Motion for Summary Judgment; <u>grant</u> Defendant's Motion for Summary Judgment; and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On June 24, 2002, the Plaintiff filed an application for a period of disability and Supplemental Security Income benefits ("SSI"), alleging she was unable to work as of January 11,

1999 due to migraine headaches, arthritis, high blood pressure, chronic back pain, and depression.[1]
The Plaintiff's claim was denied initially and on reconsideration.

The Plaintiff requested a hearing, which was held on February 2, 2005, and during which the ALJ presented a hypothetical of the Plaintiff's residual functional capacity ("RFC"), discussed below, to a Vocational Expert ("VE"). In response to that hypothetical, the VE testified that there were a significant number of jobs existing in the national economy that the Plaintiff could perform, including jobs as a photo counter clerk, gate guard, and information clerk.

On February 18, 2005, the ALJ issued a decision denying the Plaintiff's claim. The Plaintiff subsequently filed a timely Request for Review of Hearing Decision. On September 9, 2005, the Appeals Council denied the Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on October 11, 2005, raising only two issues on appeal: whether the ALJ included sufficient nonexertional limitations relating to her depression in his hypothetical to the VE and whether the ALJ erred by not also asking the VE if his testimony as to the exertional and nonexertional requirements of the photo counter clerk, gate guard, and information clerk jobs was consistent with the requirements stated in the United States Department of Labor's Dictionary of Occupational Titles ("DOT").

The parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND AND FINDINGS

Relevant to the narrow issues presented on appeal, at the time of the hearing the Plaintiff was

---

[1] The Plaintiff filed earlier applications for SSI, the most recent of which was filed on June 30, 2001 and denied at the initial level of consideration on September 4, 2001. The Plaintiff did not file a request for reconsideration of that decision which governs as res judicata through the filing date, June 30, 2001.

40 years-old, had completed her G.E.D., and had past relevant work experience as an assembly line worker, housekeeper, beautician's assistant, and cook.

The VE characterized the Plaintiff's assembly line job as light and semi-skilled, and the housekeeping, beautician's assistant and cooking jobs as medium and unskilled.

The ALJ presented the VE with the following hypothetical:

> [Plaintiff's] exertional impairments would permit sedentary and light work on a sustained basis with certain [nonexertional] limitations[s] ... rule out any such jobs where there was frequent or repetitive as compared to occasional bending, stooping, squatting, climbing, balancing ... jobs requiring repetitive pushing, pulling, or lifting as compared to periodic or occasional ... assume a degree of pain which with appropriate medication would permit the concentration for unskilled or semi-skilled work but would rule out sustained skilled concentration in an eight hour day. If we were to place those non-exertional restrictions on a female ... now 40 with the G.E.D. educational level and the prior work to the extent it might be relevant, are there jobs such a person could do?

(Tr. 72-73).

As noted above, the VE testified in response that with these restrictions, the Plaintiff could work as a photo counter clerk, a light and unskilled job, a gate guard, which was light and semi-skilled, and information clerk, sedentary and semi-skilled; and that 19,703 of these jobs were available in North Carolina. Although the ALJ did not ask the VE if his testimony as to the exertional and nonexertional requirements of those jobs was taken from the requirements stated in the Dictionary of Occupational Titles, as the Defendant points out in her brief and the Plaintiff does not dispute, the requirements identified by the VE were consistent with the requirements stated in that publication. See DOT, §§ 237.367-022 (information clerk), 249.366-010 (photo counter clerk), and 372.667-030 (gate guard).

Relevant to the other issue presented on appeal, the Plaintiff's complaints of depression, the undisputed medical record shows that from August 29, 2000 through July 16, 2003, the Plaintiff

sought treatment at the Catawba Community Mental Health Center. At a psychiatric evaluation in December 2002, Plaintiff reported symptoms of depression including sadness, decreased energy, social isolation, tiredness, problems with sleep, crying spells, and decreased appetite. Based upon these reported symptoms, Plaintiff was diagnosed with "major depressive disorder, recurrent." Plaintiff was treated with medication and counseling, but ended treatment in July 2003, when she moved.

During the time Plaintiff was being seen at the Catawaba Community Mental Health Center, she also underwent two psychological evaluations with Andrew B. McGarity, Ph.D., a psychological expert for North Carolina Disability Determination Services ("NCDDS").

At the first evaluation, conducted on October 9, 2000, the Plaintiff reported to Dr. McGarity that she had last worked in 1997; that she had quit her job because her husband did not want her to work after they were married ; and that she did laundry and worked in her flower garden. The Plaintiff also reported that she never had any in-patient psychiatric treatment. A mental status examination revealed that Plaintiff's affect suggested a degree of depression; however, she nevertheless presented with good general appearance, receptive and expressive speech, average intelligence, normal content of thought and cognitive activity, good memory, appropriate judgment and insight, and intact orientation. Dr. McGarity therefore concluded that Plaintiff was suffering from only mild depression with "quite minimal work limitations." Specifically, Dr. McGarity found that Plaintiff's mental and emotional impairments imposed only "mild" restrictions on her activities of daily living and in maintaining social functioning, and "moderate," that is, nondisabling, difficulties in maintaining concentration; and that Plaintiff had not experienced any "episode of decompensation" in a work-like setting.

At the second evaluation performed October 14, 2002, Plaintiff reported that she had not sought any mental health treatment in over a year; that she was taking Prozac, prescribed by her family physician, for depression; and that her daily activities included reading and "light shopping." A mental status examination at that time showed that Plaintiff's affect was flat and she exhibited some lethargy; however no other abnormalities were reported, and her speech was described as "good." Dr. McGarity concluded that Plaintiff's depression was mild to moderate, but that her primary limitations were physical, not mental.

Finally, on January 9, 2004, the Plaintiff was assessed at the Behavioral Health Center in Asheboro, North Carolina, and was diagnosed with "depressive disorder, not otherwise specified." For the next several months she was treated with medication and outpatient individual therapy. Treatment notes through November 2004 indicate that Plaintiff reported a decrease in depressive symptoms, that her mood and affect had stabilized, and that she was making "marked progress."

Considering this and the other undisputed evidence of record, the ALJ concluded that the Plaintiff was not disabled. It is from this decision that the Plaintiff appeals.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v.

Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that

term of art is defined for Social Security purposes.[2] The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff's "migraines, lumbar discogenic pain (status post fusion with instrumentation), lumbar spondylosis/radiculopathy, myofascial pain syndrome, and depression" were severe impairments; but that Plaintiff's impairments or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff was unable to perform her past relevant work; that the Plaintiff retained the residual functional capacity ("RFC") to perform sedentary or light work with the nonexertional restrictions of no repetitive bending, kneeling, stooping, climbing, balancing, pushing, pulling, or lifting, and no work requiring sustained concentration.

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy which the Plaintiff could perform. The VE's testimony, stated above and based on a hypothetical that factored in the limitations discussed above, provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform, and, therefore, that the Plaintiff was <u>not</u> disabled.

As previously discussed, the Plaintiff does not contest the ALJ's findings related to her physical condition, but contends only that the ALJ's hypothetical did not sufficiently take into

---

[2]Under the Social Security Act, 42 U.S.C. § 301, <u>et seq</u>., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

<u>Pass v. Chater</u>, 65 F. 3d 1200, 1203 (4th Cir. 1995).

7

account her depression and that he erred in not asking the VE if his testimony as to the requirements of the jobs he identified was consistent with the job requirements stated in the Dictionary of Titles. See "Plaintiff's Motion for Summary Judgment" and "Brief Supporting ..." (both document #17).

Concerning the latter point, the Defendant's regulations require an ALJ to inquire and resolve any "apparent conflict" between the VE's definition of the exertional and nonexertional requirements of a particular job and that contained in the DOT. SSR 00-4p However, where there is no apparent conflict, especially where the VE properly applied the definitions contained in the DOT, as here, "the mere failure to ask such a question cannot by itself require remand." Brown v. Barnhardt, 408 F. Supp. 2d 28, 35 (.D.D.C. 2006) (denying remand where there was no actual conflict between VE's testimony and DOT).

Turning to the Plaintiff's remaining assignment of error, she essentially contends that having found that her depression was "severe" at the second step of the analysis, the ALJ was bound to place some related, nonexertional restriction on her RFC, and that the limitation of no jobs requiring sustained concentration was insufficient. It is well settled, however, that a finding of "severity" does not equate with a finding that a claimant's RFC is reduced or impaired. See Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000) ("finding under step two of the regulations that a claimant has a 'severe' nonexertional limitation is not the same as a finding that the nonexertional limitation affects residual functional capacity"); and McDonald v. Secretary of Health & Human Servs., 795 F.2d 1118, 1122 (1st Cir.1986) ("the [severity] regulation ... constitutes no more than ... a de minimis screening policy").

Moreover, substantial evidence supports the ALJ's conclusion that to the extent the Plaintiff's depression impacted her ability to work, the elimination from her RFC of jobs requiring

sustained concentration was adequate. Indeed, although the evidence detailed in Section II above demonstrates that Plaintiff had a "severe" mental impairment within the meaning of the Act, it clearly shows that her employment-related limitations due to depression were mild. Aside from a depressed mood and affect, Plaintiff's mental status examinations revealed no significant abnormalities. Further, with treatment, Plaintiff's mood and affect stabilized and markedly improved. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

Finally, at two consultative examinations conducted a year apart, Dr. McGarity found that the Plaintiff's depression was mild in almost all respects, with only a "moderate," nondisabling impact on her ability to concentrate. Accordingly, the ALJ appropriately limited the Plaintiff's RFC to jobs not requiring sustained concentration.

In short, there was substantial evidence to support the ALJ's conclusion that the Plaintiff's depression had only a slight impact on her ability to work. Accordingly, and where it is otherwise undisputed that a person with the Plaintiff's physical residual functional capacity, age, education, and work experience could perform a substantial number of jobs in the national economy, the ALJ's ultimate decision to deny the Plaintiff SSI benefits must and will be affirmed.

## V. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. "Plaintiff's Motion For Summary Judgment" (document #17) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #18) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

.

Signed: July 11, 2006

Carl Horn, III
United States Magistrate Judge